Filed 6/24/26  P. v. Johnson CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,  Plaintiff and Respondent,  v.  KEVIN DEON JOHNSON,  Defendant and Appellant. | B343580  (Los Angeles County Super. Ct. No. BA437495) |

APPEAL from an order of the Superior Court of Los Angeles County, Charlaine F. Olmedo, Judge.  Reversed and remanded with directions.

Joanna Rehm, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Wyatt E. Bloomfield and Lindsay Boyd, Deputy Attorneys General, for Plaintiff and Respondent.

In 2016, Kevin Johnson was convicted of first degree murder based on the prosecution's theory that he aided and abetted Kanasho Johns, the shooter, by picking Johns up at Johns's apartment and driving him two blocks—about half of the distance to the scene of the murder. Johnson was sentenced to 50 years to life in prison.

In 2024, Johnson petitioned for vacatur of his murder conviction and resentencing pursuant to Penal Code[1] section 1172.6 on the basis that the prosecutor's closing argument permitted the jury to impute malice to him. Following a prima facie eligibility hearing, the trial court found Johnson ineligible for relief as a matter of law because he was prosecuted as a direct aider and abettor. The court expressly refused to consider the reporter's transcript of the prosecutor's closing argument at trial.

On appeal, Johnson argues that the trial court erred by refusing to consider the prosecutor's closing argument, and that he was prejudiced by the error. The People concede that the trial court erred, but argue that the error was not prejudicial.

We reverse the trial court's order and remand the matter for the court to consider the record of conviction in its entirety.

---

[1] All further statutory references are to the Penal Code.

# FACTS[2] AND PROCEDURAL HISORY

## A.    *Trial*

Johnson was tried with Johns.  At trial, the prosecution offered evidence that Johnson, Johns, and former codefendant Dwight Smith were members of the Neighborhood Crips criminal street gang, and that Johnson aided and abetted the murder for the benefit of the gang.  The prosecution's theory was that Smith identified the victim, Tavin Price, at a smoke shop where Smith and Johnson had gone to purchase cigarettes.  Smith "banged on" Price in the smoke shop, issuing a gang challenge to him and insisting that Price remove his red shoes, which were the signature color of the rival Bloods gangs.  Price walked out of the smoke shop and went to the car wash next door, where he was shot and killed by Johns about 10 minutes later.

Although the evidence at trial was that Johnson did not participate in banging on Price, and, in fact, did not speak during Smith's interaction with Price, the prosecution theorized that Johnson became involved after Price left the smoke shop.  Johnson spoke briefly to Smith, and then purportedly drove three blocks to Johns's apartment, picked Johns up, and drove Johns in the direction of the smoke shop for two blocks.  Johns then got out of Johnson's car, walked another block, crossed the street, and shot and killed Price in the car wash bay next door to the smoke shop.

---

[2] We include a recitation of the facts to give context to the prosecutor's comments only.  We do not weigh the facts or determine credibility when reviewing an order finding a petitioner prima facie ineligible for relief under section 1172.6.

3

The prosecutor elicited extensive testimony from the investigating officer regarding the Neighborhood Crips and the Rollin' 60's, a subset of the Neighborhood Crips to which Johnson and Smith belonged. The expert testified regarding crimes the Neighborhood Crips committed, including murder. Lay witnesses also testified to crimes committed by the Neighborhood Crips. Smith testified that he had been convicted of selling rock cocaine, and that he sold marijuana in the smoke shop while the owner was present. Johnson was recorded telling a confidential informant that "they" (impliedly the Neighborhood Crips) had cut video camera wires and disposed of evidence linked to the murder. Price's mother, Jennifer Rivers, who was present when Price was shot, testified that immediately after the shooting females at the smoke shop who associated with the Neighborhood Crips threatened her, called her a snitch, and said they were going to take video evidence of the murder from the smoke shop. Rivers also testified that when she was leaving court some females called her a snitch, and threatened to beat and kill her, expressly invoking the Rollin' 60's. Latisha Poole, who had been in the smoke shop when Smith banged on Price, testified that she was threatened to be quiet while she was passing Johns's holding cell in the courthouse. Smith testified that Johns and 10 to 15 other men attacked and viciously beat him while he was in a holding cell at court waiting to testify.

The evidence against Johns was overwhelming. Video recordings that captured the minutes prior to the shooting depicted Johns walking on 11th Avenue, crossing Florence Avenue, going to the back bay of the car wash, and shooting Price. Johns was positively identified by two eye witnesses who

4

knew him personally. The evidence showed that Johns violated parole and fled to Texas days after the murder.

The evidence against Johnson was primarily supplied by the testimony of former codefendant Smith. Smith testified that after Price walked out of the smoke shop and went to the car wash next door, Johnson said that Price was a rival gang member and that Johnson was going to get a gun. Smith claimed to have seen Johns getting out of Johnson's car at the corner of 71st Street and 11th Avenue minutes before the murder. When pressed, Smith testified that he saw Johnson's car door open and close. Smith testified that he pleaded with Johns not to kill Price, but that Johnson encouraged Johns. Like Johnson and Johns, Smith originally faced 50 years to life in prison. Smith pleaded guilty to manslaughter and received a sentence of 12 years in prison.

As further evidence of Johnson's role in the murder, the prosecution presented a video recording of Johns walking on 11th Avenue toward the murder scene and then fleeing the scene after the shooting. The video showed Johnson's car driving down 11th Avenue and stopping at Florence Avenue approximately 22 seconds after Johns walked into the camera's view. Johnson's car remained stopped at the intersection for approximately 40 seconds before turning right on Florence Avenue. Just before Johnson's car turned, Johns ran back into view, heading in the direction from which he first appeared. Johns ran in front of Johnson's car and continued running up 11th Avenue. Johnson's car made a right turn onto Florence Avenue. There was no video of Johns getting into or out of Johnson's car, or of Johns sitting inside Johnson's car.

In closing argument, the prosecutor emphasized that Johnson and Johns must have killed Price because they belonged to the Neighborhood Crips. The prosecutor argued that only Neighborhood Crips members could have killed Price because only Neighborhood Crips members had the ability to commit crimes in the community where the murder occurred. The prosecutor referenced the evidence that Neighborhood Crips sold drugs "openly in broad daylight[,]" that Neighborhood Crips cut camera wires, and that Neighborhood Crips threatened, attacked, and/or beat witnesses to discourage them from testifying. He argued that this evidence proved the guilt of both defendants because they were both Neighborhood Crips members. Neighborhood Crips controlled the neighborhood by committing crimes, and only they could decide "where . . . [and] how people are killed." With respect to the firearm allegation, the prosecutor stated: "[I]f you're a—with a gang member that pulls the trigger, you're responsible for what that person did. Defendant Johnson is responsible for defendant Johns using the gun and killing the victim because they're both gang members."

The jury found Johnson guilty of first degree murder (§ 187, subd. (a)) and found true the allegations that he committed the murder for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)(C)), and that a principle discharged a firearm causing death in the commission of the crime (§ 12022.53, subds. (d) & (e)(1)). The trial court sentenced Johnson to 50 years to life in prison.

## B. *Petition for Resentencing*

On June 21, 2024, Johnson filed a petition for resentencing pursuant to section 1172.6.

On August 8, 2024, the People filed a response opposing the petition. The People asserted that Johnson was ineligible for relief as a matter of law because the record showed Johnson's conviction was not based upon the natural and probable consequences doctrine or upon a theory of felony murder. The People further argued that Johnson could still be prosecuted today on the valid theory that he aided and abetted the murder with intent to kill. The People attached to the opposition, the jury instructions, the reporter's transcript of the jury instructions, the prosecutor's closing argument, the prosecutor's rebuttal argument, the verdict forms, and the prior appellate opinion affirming the judgment.

On August 20, 2024, Johnson filed a prima facie brief. Citing *People v. Langi* (2022) 73 Cal.App.5th 972, Johnson argued that the fact that the jury was not instructed on the natural and probable consequences doctrine or the felony murder theory did not render him ineligible for section 1172.6 relief as a matter of law.

The court held a hearing on Johnson's prima facie eligibility for relief on January 24, 2025. Defense counsel emphasized that the bar for prima facie eligibility is very low and cannot involve fact-finding or credibility determinations. Counsel argued that in the cases that did not meet the burden of showing prima facie eligibility either the defendant was the sole perpetrator or, if multiple people were involved, the defendant was the actual shooter. Johnson's case did not fall into either

7

category. Under the circumstances, counsel did not believe that the court could make a determination that, as a matter of law, the jury had not imputed Johns's actions and intent to Johnson. To make that determination the court would have to engage in prohibited fact finding. Counsel acknowledged that the jury was not instructed on felony murder or the natural and probable consequences doctrine, but asserted that the absence of those instructions was not determinative. Counsel pointed to the prosecutor's closing argument at trial that, with respect to the gun use allegation, Johnson was "responsible for defendant Johns using the gun and killing the victim because they're both gang members." Counsel argued the prosecutor was in effect imputing Johns's intent and actions to Johnson, making him vicariously liable for murder.

The People responded that although the prima facie eligibility threshold is low, it was not met in Johnson's case. The People argued that the jury's first degree murder finding foreclosed any possibility that it convicted Johnson on a theory of imputed malice. In contrast, in *People v. Langi, supra*, 73 Cal.App.5th 972, the jury had found the defendant guilty of second degree murder. The People also pointed out that the prosecutor's closing argument at trial suggesting Johnson was vicariously liable "related only to the gang allegation and not in any way, shape, or form to the murder counts."

Defense counsel replied that in addition to the holding that an absence of instructions on invalid theories does not foreclose eligibility, *People v. Langi, supra*, 73 Cal.App.5th 972, stands for the proposition that the court must look at everything that is presented to the jury. Under that standard, the jury may have imputed Johns's actions and mental state to Johnson.

8

The trial court stated that it considered the charging documents, jury instructions, verdict forms, and the abstract of judgment. The court refused to consider the reporter's transcripts attached to the People's opposition and stated that it was not appropriate to consider the prosecutor's closing arguments at the prima facie stage. From the documents that the court reviewed, it concluded that Johnson was convicted as a direct aider and abettor, and that the jury had been properly instructed on aiding and abetting, express and implied malice, and willful, deliberate, and premeditated murder. Based on the instructions given, the court found Johnson ineligible for relief as a matter of law and denied the petition.

Johnson timely appealed.

## DISCUSSION

### A.   *Legal Principles*

Effective January 1, 2019, Senate Bill No. 1437 added former section 1170.95 (now § 1172.6) and made other amendments to the Penal Code that eliminated the natural and probable consequences doctrine and limited the scope of liability that could be imposed under the felony murder theory. The purpose of this legislation was to " 'ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1(f).) Outside of the felony-murder rule, 'a conviction for murder requires that a person act with malice aforethought. A person's culpability for murder must be

9

premised upon that person's own actions and subjective mens rea.' (*Id.*, § 1(g).)" (*People v. Curiel* (2023) 15 Cal.5th 433, 448.)

Effective January 1, 2022, Senate Bill No. 775 further limited the theories under which a defendant could be prosecuted to better reflect this purpose. As a result, section 1172.6, subdivision (a) now provides that a "person convicted of felony murder or murder under the natural and probable consequences doctrine or *other theory under which malice is imputed to a person based solely on that person's participation in a crime* . . . may file a petition with the court that sentenced the petitioner to have the petitioner's murder . . . conviction vacated and to be resentenced on any remaining counts when all of the following conditions apply: [¶] (1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime . . . . [¶] (2) The petitioner was convicted of murder . . . following a trial . . . at which the petitioner could have been convicted of murder . . . . [¶] (3) The petitioner could not presently be convicted of murder . . . because of changes to Section 188 or 189 made effective January 1, 2019." (Italics added.)

"[T]he court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief. If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause." (§ 1172.6, subd. (c).) "[T]he parties can, and should, use the record of conviction to aid the trial court in reliably assessing whether a petitioner has made a prima facie case for relief under

10

subdivision (c)." (*People v. Lewis* (2021) 11 Cal.5th 952, 972, fn. omitted.) "The record of conviction will necessarily inform the trial court's prima facie inquiry under section [1172.6], allowing the court to distinguish petitions with potential merit from those that are clearly meritless. . . ." (*Id.* at p. 971.)

"[T]he prima facie inquiry under subdivision (c) is limited. . . . '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' " (*People v. Lewis*, *supra*, 11 Cal.5th at p. 971.) "In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' [Citation.] . . . [T]he 'prima facie bar was intentionally and correctly set very low.' " (*Id.* at p. 972.) "At the prima facie stage, a court must accept as true a petitioner's allegation that he or she could not currently be convicted of a homicide offense because of changes to [s]ection 188 or 189 made effective January 1, 2019, unless the allegation is refuted by the record. [Citation.] And this allegation is not refuted by the record unless the record conclusively establishes every element of the offense." (*People v. Curiel*, *supra*, 15 Cal.5th at p. 463.) If the petitioner makes a prima facie showing of eligibility, the trial court must issue an order to show cause and hold an evidentiary hearing. (*Ibid.*)

We independently review a trial court's determination of whether a petitioner has made a prima facie showing. (*People v. Harden* (2022) 81 Cal.App.5th 45, 52.)

11

**B.** *Analysis*

We agree with the parties that the trial court erred by refusing to consider the prosecutor's closing argument when determining whether Johnson made a prima facie showing of eligibility for relief. (See *People v. Lopez* (2022) 78 Cal.App.5th 1, 13 [record of conviction may include closing arguments of counsel]; *People v. Harden*, *supra*, 81 Cal.App.5th at p. 55 [considering counsel's arguments when determining prima facie eligibility under § 1172.6].) In promulgating Senate Bill No. 775, the Legislature specifically provided relief to persons who may have been convicted under an "other theory under which malice is imputed to a person based solely on that person's participation in a crime." (§ 1172.6, subd. (a).) Where the petitioner argues that he or she was convicted under an "other theory" of imputed malice, the absence of natural and probable consequences and felony-murder instructions to the jury alone may not be sufficient to preclude eligibility as a matter of law. (See *People v. Lopez* (2026) 19 Cal.5th 639, 661 [legislature intended Senate Bill No. 1437 to reach beyond felony murder and natural and probable consequences cases].) As here, where the petitioner has identified specific portions of the record of conviction in support of the claimed theory of imputed malice, the trial court should consider that record material in the first instance to make its prima facie determination.

12

## DISPOSITION

We reverse the trial court's order denying Johnson's petition for resentencing and remand the cause to the trial court to consider the record of conviction in its entirety.

NOT TO BE PUBLISHED.


MOOR, J.

I CONCUR:


BAKER, J.


13

*People v. Johnson*, B343580

HOFFSTADT, P. J., Dissenting.

Our Supreme Court's recent decision in *People v. Lopez* (2026) 19 Cal.5th 639 (*Lopez*) makes clear that a homicide "conviction based on imputed malice"—the threshold for potential relief under Penal Code section 1172.6—may be presented through "*argument*, evidence, and instructions." (*Id*. at p. 666, italics added.) I therefore agree with the majority that the trial court erred by flatly refusing to consider the closing arguments in this case when evaluating whether defendant had made a prima facie case under section 1172.6.

Unlike the majority, I would ask a further question: Is there a reasonable probability that, had the trial court considered the closing arguments in this case, defendant would be entitled to an evidentiary hearing (because those arguments create the potential that the record would no longer conclusively establish defendant's guilt under a still-viable theory)? (*People v. Lewis* (2021) 11 Cal.5th 952, 973-974; *People v. Curiel* (2023) 15 Cal.5th 433, 463 (*Curiel*).)

I do not think there is.

The baseline rule is that the jury instructions are controlling, such that the absence of any instruction on a theory of imputed malice forecloses relief under section 1172.6 as a matter of law (rendering denial at the prima facie stage appropriate). (*People v. Harden* (2022) 81 Cal.App.5th 45, 52 ["[I]f the record shows that the jury was not instructed on either the [now-invalid] natural and probable consequences or felony-murder doctrines, then the petitioner is ineligible for relief as a

matter of law."]; see also *People v. Cunningham* (2025) 112 Cal.App.5th 1243, 1250 ["It is the instructions given that inform the jury's verdict."].)  Defendant does not dispute that his jury was never instructed on a theory of imputed malice.

Instead, defendant argues that the prosecutor's closing argument injected a now-invalid theory of imputed malice into the trial and thus infected the jury's verdict—notwithstanding the jury instructions.

There is no doubt that, when the jury instructions are *ambiguous*, the argument of counsel may well exploit that ambiguity to inject an imputed malice theory into the proceedings.  Our Supreme Court's very recent decision in *Lopez* acknowledges as much.  (*Lopez*, *supra*, 19 Cal.5th at p. 667; accord, *People v. Maldonado* (2023) 87 Cal.App.5th 1257, 1268-1269.)

But the jury instructions in this case were not ambiguous. Defendant's jury was given the standard instruction for direct aiding and abetting, which correctly sets forth the elements that together require a finding that the aider and abettor shared the perpetrator's intent to kill (*People v. McCoy* (2001) 25 Cal.4th 1111, 1118); this element requiring proof that defendant personally harbored an intent to kill is precisely why direct aiding and abetting remains a viable theory of homicide (*Curiel*, *supra*, 15 Cal.5th at p. 463).

The calculus is different where the jury instructions are correct and unambiguously so.  In that instance, and where, as here, the jury is also instructed that the argument of counsel cannot trump those instructions, the "presumption that jurors understand and follow trial court instructions" and thus will disregard "'argument [that] runs counter to [the] instructions'"

2

applies with full force.  (*People v. Gonzales* (2018) 5 Cal.5th 186, 205; *People v. Centeno* (2014) 60 Cal.4th 659, 676.)  That should raise the bar for what is necessary to show that counsel's argument has injected an impermissible theory into the case.

Looking at the evidence before this court de novo (*People v. Anaya* (2025) 117 Cal.App.5th 615, 620), I do not see a reasonable probability that the prosecutor's closing argument in this case clears that higher bar—or even the regular bar, for that matter. At no point did the prosecutor explicitly urge the jury to infer defendant's intent to kill from his gang membership or to impute another gang member's intent to defendant.  To the contrary, the prosecutor was careful to repeat the standard jury instruction requiring proof that defendant "knew [Johns] intended to commit the murder" and that he "intended to aid and abet" Johns in doing so—in other words, that defendant himself shared Johns' specific intent to kill.  The prosecutor went on to restate that requirement in plain language, explaining that defendant was guilty of the charged murder because he "knew what [] Johns was going to do and he helped" and because defendant was "directly involved" in the killing.  I read these arguments as being wholly consistent with the instructions' requirement that the jury find that defendant himself acted with the specific intent to kill.

Defendant's argument to the contrary rests chiefly on the possibility that a jury could have inferred an imputed malice theory from the prosecutor's repeated references to defendant's gang membership and the power of that gang in the neighborhood.  I do not view that line of argument by the prosecutor as urging the jury to disregard the intent to kill element in favor of a theory of imputed malice; rather, the prosecutor was arguing that defendant's gang membership was

3

relevant, not only to prove the gang enhancement,[1] but also to prove defendant's identity and motive, both of which were relevant to prove that defendant—as a gang member with a motive against a rival gang—acted with the intent to kill. (*People v. Holmes, McClain & Newborn* (2022) 12 Cal.5th 719, 772 ["gang . . . membership [is] highly relevant to prove their involvement, motive, and intent to kill"].) To read the prosecutor's references to gang membership in this case as implicitly injecting an imputed malice theory is, in my view, to require a prosecutor to repeat the phrase, "But you still need to find the defendant's personal intent to kill" after every reference to gang evidence— even where, as here, the prosecutor correctly reiterated the correct instruction on intent. Defendant also relies heavily on the prosecutor's statement that defendant "is responsible for [] Johns using the gun and killing the victim because they're both gang members," but wholly ignores that this sentence was spoken—not as an argument for holding defendant liable for murder—but rather for holding him liable for the firearm enhancement based on a principal's use of a gun when a gang is involved (under section 12022.53, subdivision (e)(1))—as it came after the prosecutor's mention of the "gun allegation."

Section 1172.6 was enacted to ensure that homicide convictions rest on a finding of personal—rather than imputed—intent. Where the jury instructions correctly and unambiguously mandated such a finding of personal intent and the prosecutor at no point invited the jury to disregard that mandate, I am reluctant to find that closing argument has implicitly injected an

---

[1]     This trial occurred long before the current statutory duty to bifurcate the gang enhancement was enacted. (Pen. Code, § 1109.)

4

impermissible, imputed malice theory—particularly where, as here, that imputation rests on excerpts of what was said wholly divorced from their context. I worry that this invites the flyspecking of closing arguments years or decades after the fact. More fundamentally, I worry that it turns section 1172.6 into a form of "super habeas" that affords an evidentiary hearing (where new evidence may be introduced in support of overturning homicide convictions) in situations where traditional habeas would foreclose relief (either because the prosecutor's comments do not rise to the level of a misstatement of the law that would warrant such relief, or because the usual restraints on successive and abusive writs would bar relief). I see nothing in the text or purpose of section 1172.6 that warrants such a fundamental terraforming of the landscape of post-conviction relief.

I accordingly dissent.


_____, P. J.
HOFFSTADT

5